UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

COLTON DAVID TRIMBLE,

                             Plaintiff

-vs-

ANDREW M. SAUL,
Commissioner of Social Security,

                             Defendant.

_____

DECISION AND ORDER

18-CV-6018 CJS

APPEARANCES

For the Plaintiff:                  Justin M. Goldstein, Esq.
                                     Kenneth R. Hiller, Esq.
                                     Law Offices of Kenneth Hiller
                                     6000 N. Bailey Avenue, Suite 1A
                                     Amherst, New York 14226

For the Defendant:              Alexander Broche, Esq.
                                     Prashant Tamaskar, Esq.
                                     Social Security Administration
                                     Office of General Counsel
                                     26 Federal Plaza, Room 3904
                                     New York, New York 10278

                                   Francis D. Tankard, Esq.
                                   Susan E. Meehan, Esq.
                                   Social Security Administration
                                   Office of General Counsel
                                   601 E. 12th Street, Room 965
                                   Kansas City, Missouri 64106

                                   Kathryn L. Smith, A.U.S.A.
                                   United States Attorney's Office
                                   for the Western District of New York
                                   100 State Street
                                   Rochester, New York 14614

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Lisa Trimble for Supplemental Security Income ("SSI") benefits on behalf of her son, Colton David Trimble ("Colton" or "Plaintiff"), who was a minor at the time of the application. Plaintiff alleged that Colton is disabled due to Attention Deficit Hyperactivity Disorder ("ADHD"), a learning disorder and asthma, but the Commissioner found otherwise. Now before the Court is Plaintiff's motion (Docket No. [#12]) for judgment on the pleadings and Defendant's cross-motion [#18] for the same relief. For the reasons discussed below, Plaintiff's motion is denied, Defendant's motion is granted, and this action is dismissed.

STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

In determining whether a child is entitled to SSI benefits pursuant to 20 C.F.R. 416.924,

> [t]he Commissioner follows a three-step sequential evaluation process to determine whether [the] child is disabled.   At step one, if [the] child is performing substantial gainful activity, the claim is denied.   If not, the Commissioner considers whether the child's impairment is non-severe, a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."   If the child's impairment is not severe, the claim is denied.
>
> If the impairment is severe, then the Commissioner considers whether the child has an impairment or a collection of impairments that "meet, medically equal, or functionally equal" any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings").

*Arsenault v. Colvin*, No. 13–cv–6589 (SAS), 2015 WL 631403 at *6 (S.D.N.Y. Feb. 13, 2015) (citations and footnotes omitted).

In the instant case, Plaintiff does not contend that the child's impairments meet or medically equal a listed impairment, but contends that they "functionally equal" the listings.   In such case,

> the Commissioner reviews the evidence to determine how the child's impairments affect h[is] functioning in several broad areas, known as domains.   These domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating to others; (iv) moving and manipulating objects; (v) caring for one's self; and (vi) health and physical well-being.   The regulations provide for each age category, and establish a different standard for each age group.
>
> The Commissioner determines within each domain whether the degree of the child's limitation is "marked" or "extreme."   <u>A child is considered disabled if [he] has an extreme limitation in one domain or a marked limitation in two domains.</u>   A "marked" limitation is one that "interferes

3

seriously with [the child's] ability to independently initiate, sustain, or complete activities."   An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."

*Arsenault v. Colvin*, 2015 WL 631403 at *6 (emphasis added; citations and footnotes omitted); *see also*, 20 CFR § 416.924.

The instant action involves alleged "functional equivalence" based upon limitations in four domains: acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for self.[1]   The activities within these four domains that are typical of adolescents, as well as examples of limited functioning within these domains, are described in 20 C.F.R. §§ 416.926a(g), (h), (i) and (k), respectively.

For example, with regard to "acquiring and using information," the regulation indicates that adolescents "should be able to comprehend and express simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations," and should learn "to apply these skills in practical ways that will help [them] enter the workplace after [they] finish school."[2]   Limited functioning in this domain could include "difficulty recalling important things [that were] learned in school [the day before]," "difficulty solving mathematics questions or computing arithmetic answers," speaking "only in short, simple sentences" or having

---

[1]  Plaintiff maintains that Colton has at least marked impairments in these four domains. Pl. Memo of Law [#12-1] at p. 10.
[2]  20 C.F.R. § 416.926a(g)(2)(v).

"difficulty explaining what [one] mean[s]."[3]

With regard to "attending and completing tasks," adolescents should "be able to pay attention when [spoken to directly], sustain attention to [their] play and learning activities, and concentrate on activities like putting puzzles together or completing art projects."[4] Limited functioning in this domain could include "repeatedly [becoming] sidetracked from [activities] or frequently interrupt[ing] others," becoming "easily frustrated and giv[ing] up on tasks, including ones [which the adolescent] is capable of completing," and "requir[ing] extra supervision to keep [the adolescent] engaged in an activity."[5]

With regard to "interacting and relating with others," adolescents should be able to "initiate and develop friendships with children [of their same age]," "relate appropriately to other children and adults both individually and in groups," "be able to solve conflicts between [themselves] and peers or family members or adults outside [their families]," "recognize that there are different social rules for [themselves and their friends] and for acquaintances and adults," "be able to intelligently express [their] feelings," "ask for assistance in getting [their] needs met," "seek information," "describe events," and "tell stories, in all kinds of environments."[6] Limited functioning in this domain could include "hav[ing] difficulty playing games or sports with rules," "hav[ing] difficulty communicating with others," or "hav[ing] difficulty speaking intelligibly or with

---

[3] 20 C.F.R. § 416.926a(g)(3).
[4] 20 C.F.R. § 416.926a(h)(2)(v).
[5] 20 C.F.R. § 416.926a(h)(3).
[6] 20 C.F.R. § 416.926a(i)(2)(v).

adequate fluency."[7]

With regard to "caring for yourself," adolescents should be able to "feel more independent from others and [be] increasingly independent in all of [their] day-to-day activities," "begin to discover appropriate ways to express [their] feelings, both good and bad," and "think seriously about [their] future plans."[8]   Limited functioning in this domain could include not dressing or bathing appropriately, "engag[ing] in self-injurious behavior," "ignor[ing] safety rules," "not spontaneously pursu[ing] enjoyable activities or interests," or "hav[ing] disturbances in eating or sleeping patterns."[9]

## FACTUAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.   The Court will briefly summarize the record as necessary for purposes of this Decision and Order.

On February 6, 2014 (mid-way through Colton's freshman year of high school), Plaintiff filed the subject application for benefits.   In connection therewith, on February 25, 2014, Plaintiff filled out a "Function Report" purporting to detail her son's abilities and limitations in categories that closely correspond to the six domains discussed above.[10] Notably, in the domain of "caring for self," Plaintiff indicated that Colton had no limitations.[11]  In the domain of "interacting and relating with others," Plaintiff indicated that Colton has difficulty making new friends due to "self-consciousness," but that

---

[7]  20 C.F.R. § 416.926a(i)(3).
[8]  20 C.F.R. § 416.926a(k)(2)(v).
[9]  20 C.F.R. § 416.926a(k)(3).
[10]  Transcript 152-160
[11]  Transcript 158 ("Is the child's ability to take care of his or her personal needs and safety limited?")

otherwise, he has friends his own age, generally gets along with his parents, siblings, teachers and other adults, and plays sports.[12]   In the domain of acquiring and using information, Plaintiff stated generally that Colton "has memory problems" and "difficulty understanding what he reads," which causes "difficulty with instruction and following directions."[13]   More specifically, Plaintiff indicated that Colton has difficulty with reading comprehension, multiplying and dividing numbers above ten, making change for money, and understanding and carrying out simple instructions.[14]   In the domain of attending and completing tasks, Plaintiff indicated that in general, Colton has "very poor organizational skills and is easily distracted."[15]   More specifically, Plaintiff stated that Colton has difficulty finishing things he starts, completing homework, and completing chores, but that he works on arts and crafts projects and "keeps busy on his own."[16]

After the claim was denied initially, a hearing was held on July 14, 2016, before an Administrative Law Judge ("ALJ").   Plaintiff appeared with her attorney and with Colton, though she agreed to have Colton remain outside the hearing room during the proceeding.   The ALJ took testimony from Plaintiff, who indicated that Colton had just turned seventeen, and would be entering Twelfth Grade the following year.[17]   Plaintiff indicated that Colton's only prescription medications were for asthma and allergies, and that he did not take (and never had taken) any medications to address his ADHD or

_____

[12]  Transcript 157 ("Does the child's impairment(s) affect his or her social activities or behavior with other people?")
[13]  Transcript 156 ("Is there any limitation in the child's progress in understanding and using what he or she has learned?")
[14]  Transcript 156
[15]  Transcript 159 ("Is the child's ability to pay attention and stick with a task limited?")
[16]  Transcript 159
[17]  Transcript 40

learning impairment.[18] Plaintiff essentially indicated in that regard that she was concerned about possible side effects from such medication.[19] Plaintiff also indicated that Colton was not attending counseling or therapy, because he was "not willing to participate."[20]

Plaintiff testified that Colton's primary care physician since his birth had been his pediatrician, Rahul Sengupta, M.D. ("Sengupta").[21] The Court observes that during office visits with Dr. Sengupta, Colton and/or Plaintiff typically indicated that school was going well for Colton.[22] *See, e.g.*, Transcript 638 ("7th grade doing better this yr."); 651 ("Social- wrestling presently. School – freshman year, transitioned well."); 6660 ("Social – wrestling in winter. School – 10th grade, doing well."); 666 ("Social – wrestling in winter. School – Junior yr, doing well."). Colton also reportedly told Sengupta that he had regular sleep patterns.[23]

Returning to the hearing testimony, Plaintiff indicated that Colton's junior year of high school had been stressful for him, and that he had dropped one class (math) that he had been failing, and that he would have to re-take the class during his senior year.[24]

---

18 Transcript 41
19 Transcript 42
20 Transcript 44
21 Transcript 40-41
22 Notes from the office visits indicate that both Colton and his mother were in the examining room.
23 After the issuance of the ALJ's decision, on February 2, 2017 (mid-way through Colton's senior year), Dr. Sengupta completed a report in which he was asked to indicate Colton's degree of limitation in the aforementioned six domains of functioning. With regard to Colton's ADHD diagnosis, Sengupta indicated that Colton had "mild" limitations in impulsiveness, hyperactivity and cognitive/communication function; "moderate" limitations in inattention; and "marked" limitations with regard to "age-appropriate social functioning," "age-appropriate personal functioning" and "maintaining concentration, persistence or pace." However, Sengupta also opined that overall, Colton had less-than-marked impairments in all six of the aforementioned domains. Transcript 689-690
24 Transcript 43-44

Plaintiff admitted, though, that Colton was "on track" to graduate and earn his New York Regent's Diploma.[25]   Plaintiff indicated that Colton planned to pursue a trade as an electrician, rather than attend college. In that regard, Plaintiff indicated that Colton was attending BOCES[26] for "hands-on" electrical training, which he enjoyed.[27]   Plaintiff indicated that Colton had seventeen absences during the prior school year, and had been late to school many times, because he wanted to avoid going to math class and gym class, which were his first classes of the day.[28]   Plaintiff indicated that at the end of the prior school year, teachers had expressed to her their concern about Colton's moodiness.   Plaintiff indicated that Colton would continue to have an Individualized Education Program ("IEP") during his senior year.   Plaintiff stated that Colton had difficulty with organization and with remembering what he had studied.

Regarding Colton's school performance, the record contains report cards for the relevant period, during which he was receiving educational supports as provided for in his IEP.   For example, Colton's ninth grade report card indicates that his quarterly grade point averages ("GPA") were 74, 69, 70 and 60, respectively.[29]   Colton passed all subjects except "design & drawing," in which his final average was 57.   As for his core subjects, Colton's final grades in English, Algebra, Phys Ed, Earth Science and Global History were 67, 67, 98, 66 and 71 respectively.

---

[25] Transcript 45

[26] Plaintiff is referring to the Board of Cooperative Educational Services ("BOCES"), incorrectly transcribed as "Boyce Program." Transcript 49

[27] Transcript 49-50, 55 ("You know in his Trade Electricity, he maintained a low 80 and again that's a hands on class and he you know he does like it.")

[28] Transcript 46-47

[29] Transcript 561

Colton's tenth grade report card indicates that his quarterly GPAs were 70, 72, 71 and 72, respectively.[30]   As for particular subjects, Colton's final grades in Studio Art, English, Health, Geometry, Phys Ed, Living Environment (biology) and Global History were 89, 62, 76, 61, 94, 68 and 63, respectively.

In terms of final examinations and Regent's examinations taken during his first two years of high school, Colton earned a 78 on his Living Environment Regent's examination,[31] a 76 on his Global History Regent's examination, and a 69 on his Regent's Common Core Algebra examination.[32]   Colton performed less well on his final exams for Earth Science, Regent's Geometry and Regent's Common Core Geometry, earning scores of 58, 62 and 56, respectively.[33]

Colton's eleventh grade report card, covering the first two quarters of the year, indicates that his quarterly GPAs as of the date of the hearing were 81.7 and 75.[34] Colton was spending half of each school day at his BOCES Electrical Trade program,[35] in which his quarterly averages were 86 and 82.[36] Colton's only failing quarterly grade was a 63, in United States History and Government, and the comment by his teacher suggested that this was because Colton had failed to turn in certain work.[37] Interestingly, Colton's quarterly grades in Eleventh Grade English were 82 and 76, and his teacher indicated that he was a "pleasure to have in class."

---

[30] Transcript 569
[31] Transcript 569
[32] Transcript 576.
[33] Transcript 576
[34] Transcript 572, 576
[35] Transcript 50
[36] Transcript 572
[37] Transcript 572 ("Colton needs to take advantage of extended due dates on work he owes.")

The record also contains two "teacher questionnaires," written by individuals who were "special education teachers/IEP case managers," who provided special education services to Colton, and also taught him some or all of a math class.[38]   Both questionnaires are divided into six sections, to correspond to the six aforementioned domains for evaluating functional equivalence.

The first questionnaire,[39] by Dina Malboeuf ("Malboeuf"), was written in March 2014, six months into Colton's freshman year.   Malboeuf's report indicates, in pertinent part, that Colton was reading a 4th-5th grade level for maximum comprehension, but that he could read at an 8th grade level with "slower fluency"; that he did not have an unusual number of absences from school; that he had a "serious" problem expressing ideas in written form; that he had "obvious" but not serious problems with reading and reading comprehension, comprehending math problems, understanding and participating in class discussions, providing oral explanations, learning new material, recalling previously-learned material, applying problem-solving skills in class discussions, focusing long enough to finish assignments, carrying out multi-step instructions, organizing materials, and completing classwork and homework assignments; that he needed extra assistance with complex vocabulary and tasks; that he benefited from 1:1 assistance during the writing process; and that he needed frequent "check ins" or reminders to stay focused and on task.   However, Malboeuf opined that Colton had no problems interacting and relating with others, moving about and manipulating objects, or

---

[38]  Transcript 561, 572
[39]  Transcript 366-373

caring for himself.   In making these observations, Malboeuf opined that Plaintiff had limitations in three domains (acquiring and using information, attending and completing tasks, and health and physical wellbeing (exercise induced asthma), and no limitations at all in the remaining three domains.

The second teacher questionnaire, by Virginia Perry Pschierer ("Pschierer"), was written in March 2016, six months into Colton's junior year.[40]   The Court notes that because Colton was attending his BOCES Electrical Trade program at that time, Pschierer apparently would have been able to observe him for only part of each day, and would not have been able to observe him at BOCES, where he apparently performed well.   Nevertheless, Pschierer's report states, in pertinent part, that Colton was frequently tardy to his first class of the day; that he had "serious" but not "very serious" problems with understanding and participating in class discussions, providing organized explanations, expressing ideas in written form, carrying out multi-step instructions, completing assignments, working at a reasonable pace, relating experiences and telling stories, handling frustration, identifying and asserting his emotional needs, responding to changes in his own mood, using appropriate coping skills, and knowing when to ask for help; and that he had "obvious" but not "serious" problems with comprehending oral instructions, understanding vocabulary, reading and comprehending written material, recalling and applying learned material, applying problem-solving skills, focusing on finishing work, re-focusing when necessary, organizing materials, working at a reasonable pace, expressing anger appropriately,

_____

[40]  Transcript 589-596

asking permission appropriately, introducing and maintaining appropriate topics of conversation, using vocabulary and grammar to express thoughts and ideas and being patient.   Pschierer indicated that Colton wanted to be independent and "usually" rejected teachers' attempts to help him; that he had difficulty completing long-term assignments; that he frequently needed reminders about overdue assignments; that he frequently needed prompting to get back on task; that he was "very withdrawn in the classroom," and "frequently" sat hunched over in his chair, "staring into his lap"; that he "appear[ed] depressed and withdrawn"; that he "appear[ed] to be an almost constantly angry person"; and that he was "unapproachable by adults."[41]  In making these observations, Pschierer opined that Plaintiff had limitations in every domain except one, "moving about and manipulating objects."

Pschierer's comments about Colton's apparent anger seem consistent with Plaintiff's testimony at the hearing, that Colton had recently become more moody, stressed and angry.[42]   However, some aspects of Pschierer's assessment seem inconsistent with other evidence of record, such as the fact that Colton maintained an overall 78.6 average during the period upon which Pschierer was commenting; that Colton maintained an 85 average in BOCES Electrical Trade during that same period; that Colton enjoyed the BOCES program;[43]  that a few months prior to Pschierer's report Plaintiff and/or Colton had told Dr. Sengupta that Colton was "doing well" at school;[44]

---

[41] Transcript 594
[42] Transcript 44
[43] Transcript 55
[44] Transcript 666

and that Colton's English teacher during that same period indicated that he was a "pleasure to have in class."[45]   Pschierer's report is also inconsistent with the report of Malboeuf, which opined that Plaintiff had no limitations at all in three of the six domains.

On September 7, 2016, the ALJ issued his Decision, finding that Colton was not disabled at any time between February 6, 2014, the date of the application, and September 7, 2016, the date of the decision.[46]   The ALJ found that Colton had severe impairments consisting of "asthma, learning disorder, and [ADHD]."[47]   However, the ALJ found that those impairments did not meet or medically equal a listed impairment, and that they did not functionally equal the severity of the listings.[48]

In reaching that conclusion, the ALJ reviewed the evidence and noted, for example, that consultative psychologist Yu Yin Lin, Ph.D. ("Lin") had examined Colton and reported essentially normal findings, except that Colton's affect was "somewhat flat," he seemed to have mild memory impairment due to nervousness, and his cognitive functioning was "below average."[49]   Lin further reported that Colton's "demeanor was cooperative," his "manner of relating was fair," his attention and concentration were intact, and both his general fund of information and insight were age appropriate.[50]   Regarding Colton's performance in school, Colton reportedly told Dr. Lin that "his grades are okay, but he has difficulty in math," while Plaintiff reportedly stated that

---

[45] Transcript 572
[46] Transcript 11-23.
[47] Transcript 14
[48] Transcript 14
[49] Transcript 17
[50] Transcript 609-610

Colton was "borderline failing in all subjects, especially reading, writing and math."[51]

Colton reportedly told Lin that he occasionally fails to pay attention to details, that he is easily distracted, that he is not anxious (though his mother claims otherwise), that he has "more good days than bad days," and that "he does not feel depressed, but [just] gets bored very easily."[52]   Lin noted that Colton was not taking medication or pursuing therapy for any mental impairments.   Overall, Dr. Lin stated:

> The claimant can attend to, follow, and understand age-appropriate directions. He can complete age-appropriate tasks.   He can adequately maintain appropriate social behaviors.   He is mildly limited in responding appropriately to changes in environment.   He is mildly limited in learning in accordance to cognitive functioning.   He can ask questions and request assistance in an age-appropriate manner.   He can be aware of danger and take needed precautions. He can adequately interact with peers and adults.   The results of the examination appear to be consistent with stress-related problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

Transcript 611.

Regarding Dr. Lin's opinion that Colton's cognitive functioning was "below average," the Court notes that the record contains other assessments indicating that Colton's intellectual functioning is average in some areas and only slightly below average in other areas.   For example, on June 11, 2014, shortly after Dr. Lin's assessment, testing at Colton's school indicated that his "intellectual ability" was "in the low average range," and that with regard to his "cognitive abilities," his was "in the

---

[51] Transcript 608
[52] Transcript 608

average range in verbal ability."[53]   The same report indicated that Colton's "speeded

visual perception and matching" were "limited to average," meaning that he would "find

age-level tasks requiring quick visual symbol perception difficult."[54]   Similarly, testing

when Colton was in seventh grade indicated "average scores for applied problems and

math fluency, low average scores for calculation, letter-word identification, passage

comprehension, and writing samples, with below average reading fluency and

spelling."[55]   Samples of Colton's handwriting in the record indicate that he has poor

handwriting and spelling skills.

In general, the ALJ further noted that Colton was not receiving either medication

or therapy for his ADHD or learning problems, and that he showed improvement in

school during the relevant period.[56]

With regard to the domain of "acquiring and using information," the ALJ found

less than a marked limitation, noting that while Colton needed consultant teacher

services and was below average in reading and writing, he nevertheless showed

improvement overall and scored in the "low average to average range" on cognitive

testing.

With regard to the domain of "attending and completing tasks," the ALJ found

less than a marked limitation, noting that while Colton was distractible, disorganized and

had difficulty completing assignments, he did not receive any treatment for ADHD and

---

[53] Transcript 559
[54] Transcript 559
[55] Transcript 316
[56] The ALJ noted, for example, that Colton was placed in a special English class during his freshman year, but not thereafter. Transcript 16

was able to engage in a wide range of daily activities such as "personal care tasks, independent travel, using a computer, and watching T.V."[57]

With regard to the domain of "interacting and relating with others," the ALJ again found less than a marked impairment, and, indeed, found that Colton had "no limitation in interacting and relating with others."[58]   In that regard, the ALJ stated that while Pschierer had referred to Colton's "withdrawal in class, mood issues, diminished energy, and depression," Colton had not received treatment for any mental condition, and mental examinations had not shown any "behavioral or relational abnormalities," but, rather, the record showed that Colton "maintained relationships with others, behaved respectfully, and was able to participate in group work."[59]

Finally, with regard to the domain of "caring for yourself,"[60]  the ALJ found that Colton had no limitation.   In that regard, the ALJ noted that Colton was able attend to his own personal care, was a member of the school wrestling team, assisted with household chores, and enjoyed walking in the woods near his home.

In sum, the ALJ concluded that Colton had neither marked impairment in two domains nor severe impairment in one domain, and that he was therefore not disabled. The ALJ indicated in that regard that he had given "significant weight" to the opinions of Dr. Lin and Ms. Malboeuf.   The ALJ gave "less weight" to the opinion of Ms. Pschierer, explaining:

---

[57] Transcript 19
[58] Transcript 20
[59] Transcript 20
[60] Again, Plaintiff in this action does not contend that Colton has at least marked limitations in the two remaining domains ("moving and manipulating objects" and "health and physical well-being").

17

Although education records document below grade level performance, distractibility, difficulty with complex instruction, and inconsistent homework completion, some overall improvement was noted. While the claimant required redirection, he was not treated for ADHD symptoms. Furthermore, the claimant maintained relationships and acknowledged a range of activities of daily living. Despite his asthma diagnosis, examinations of record did not document respiratory abnormalities and the claimant was able to hike, ride a bike, and wrestle.

Transcript 17.

Plaintiff appealed, but the Appeals Council declined to review the ALJ's determination.

On January 8, 2018, Plaintiff commenced this action. On November 28, 2018, Plaintiff filed the subject motion [#12] for judgment on the pleadings. Plaintiff contends that remand is required because "the ALJ's functional equivalence finding is unsupported by the appropriate legal standards and substantial evidence."[61] More specifically, Plaintiff alleges the following errors by the ALJ: 1) "the ALJ inappropriately selectively cited to the record while ignoring the extensive evidence supportive of marked limitations in [four] domains," namely, the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for self; 2) the ALJ took a "narrow view of the medical record [and] did not follow the ["]whole child["] standard directed by the Regulations and Rulings"; 3) the ALJ "fabricated" the assertion that Colton showed academic improvement, because "the education record does not show improvement"; 4) the ALJ failed to explain the weight

---

[61] Docket No. [#12-1] at p. 10

that he assigned to the medical and educational opinions; 5) the ALJ erroneously relied upon "stale" opinions from consultant doctors; and 6) the ALJ's determination that Colton did not have at least marked limitations in the four above-stated domains is not supported by substantial evidence.

## DISCUSSION

The Court has reviewed the administrative transcript and the parties' submissions, and concludes that Plaintiff's arguments lack merit. For example, the Court does not agree that the ALJ improperly "cherry picked" evidence that supported a finding of non-disability, while ignoring evidence of disability, as Plaintiff contends. To the contrary, the ALJ discussed all of the evidence, and explained why he believed that the evidence overall warranted the denial of Plaintiff's claim. Nor does the Court agree that the ALJ failed to apply the proper legal standards, including the "whole child" standard. Rather, the ALJ discussed the various applicable legal standards, including the "whole child" standard, and applied them. Similarly, the Court finds no merit to Plaintiff's contention that the ALJ "fabricated" evidence that Colton had shown academic improvement during the relevant period. To the contrary, the Court agrees that the record shows such improvement. The Court also disagrees with Plaintiff's contention that the ALJ failed to explain why he assigned particular weight to the various medical and educational opinions. As discussed earlier, the ALJ in fact provided such an explanation.[62] In sum, the ALJ indicated that Pschierer's opinion was inconsistent with various other evidence.

---

[62] ALJ's Decision, Transcript at p. 17, fifth paragraph.

The Court further disagrees with the argument that the opinions of the consulting doctors, including Dr. Lin, were "stale." Plaintiff's argument on that point is also inconsistent, because on one hand Plaintiff contends that the opinion of Ms. Malboeuf, which was made around the same time as the reports by the consultative examiners, should result in a finding of disability, while on the other hand Plaintiff argues that Malboeuf's opinion is also stale.

Finally, the Court finds that Plaintiff is incorrect to assert that the ALJ's findings, regarding the four domains at issue, are unsupported by substantial evidence. To begin with, insofar as this argument involves the domains of interacting and relating with others and caring for self, it is somewhat disingenuous. For example, both Plaintiff (Colton's own mother) and Ms. Malboeuf indicated that Colton did *not* have problems caring for himself.[63] Similarly, Malboeuf indicated that Colton had no limitations with regard to relating and interacting with others, while Plaintiff indicated only that he had problems making new friends due to self-consciousness.[64] Accordingly, it is difficult to see how the ALJ's finding that Colton had less-than-marked limitations in those domains could be unsupported by substantial evidence, particularly since the evidence to the contrary essentially consists only of the report of Ms. Pschierer, which, as already pointed out, was inconsistent with much of the other evidence in the record.

---

[63] Transcript 158, 371
[64] Transcript 157, 369

As for the domains of acquiring and using information and attending and completing tasks, the Court also finds that the ALJ's determination is also supported by substantial evidence.   Plaintiff's argument to the contrary is primarily that the ALJ should have found that Colton had at-least-marked impairments in those domains since both Ms. Malboeuf and Ms. Pschierer indicated that Colton had "serious" limitations with regard to various activities within those domains.   The Court disagrees.

Preliminarily in that regard, the Court notes that while Ms. Malboeuf opined that Plaintiff had "obvious" problems with various activities in the domain of attending and completing tasks, she indicated that those problems were *not* serious or very serious.[65] Similarly, with regard to the domain of acquiring and using information, Malboeuf indicated that Colton had a "serious" problem in just one activity, namely, "expressing ideas in written form."[66]   Ms. Pschierer, on the other hand, indicated that Colton had "a serious problem" in three activities within the domain of acquiring and using information, and in three activities in the domain of attending and completing tasks.[67]   However, Schierer did *not* believe that Colton had "a very serious problem" with regard to any activity within those domains.[68]

Further, courts have rejected the argument that a teacher's opinion that a child has a "serious" limitation in a particular activity translates into a "marked" limitation in a particular domain. *See, e.g., White o/b/o T.R.W. v. Berryhill*, No. 17-CV-6367P, 2019

---

[65] Transcript 368
[66] Transcript 367
[67] Transcript 590-591
[68] Transcript 590-591

WL 1367382, at *5, n. 3 (W.D.N.Y. Mar. 26, 2019) ("White appears to argue that the teachers' assessments of 'serious' or 'very serious' problems in their questionnaires necessarily equate to "marked" or "extreme" limitations, based on the definitions of those limitations in the regulations.   She provides no authority for this argument, however, aside from the wording of regulations, and several courts have rejected the same proposition.") (citations omitted).

Moreover, while a child's impairments may seriously limit his ability to perform one or more activities within a particular domain, such fact does not mean that the child has at least a marked limitation in that domain. *See e.g.,* 20 C.F.R. § 416.926a(f)(3) ("When you have limitations in a given activity or activities in the examples, we may or may not decide that you have a 'marked' or 'extreme' limitation in the domain."); *see also*, *Smith v. Colvin*, No. 13-CV-6143P, 2015 WL 1119983, at *17 (W.D.N.Y. Mar. 12, 2015) ("Although his global studies teacher assessed that Smith suffered from several 'very serious' to 'serious' limitations in this domain, that assessment is not necessarily inconsistent with the ALJ's conclusion that Smith suffered from less than marked limitations in this domain."); *Crouch ex rel. K.C. v. Astrue*, No. 5:11-CV-0820 LEK/ESH, 2013 WL 316547, at *2 (N.D.N.Y. Jan. 28, 2013) (Rejecting contention that because a child's teacher had indicated that the child had a "serious problem" or "very serious problem" with particular activities in a given domain, the child necessarily had at least a marked impairment in the domain: "Ms. Homer did not render an overall assessment in any of the six domains used to gauge disability; her judgment of K.C.'s 'serious' or 'very serious' problems related only to certain activities within the domains.").   Rather, the

ALJ must "consider all the relevant information." 20 C.F.R. § 416.926a(e)(1)(i).

Here, the ALJ acknowledged and discussed the entire record, including the opinions of both Malbouef and Pschierer, and found based on the record as a whole that Colton had less-than-marked impairments in the domains of acquiring and using information and attending and completing tasks, and such finding is supported by substantial evidence.

CONCLUSION

Plaintiff's application [#12] is denied, defendant's application [#18] is granted, and this action is dismissed. The Clerk of the Court is directed to enter judgment for defendant and close this action.

So Ordered.

Dated: Rochester, New York
July 8, 2019

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge